**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: _____

ADVANCED EXTERIORS, INC.,

    Plaintiff,

v.

LIBERTY MUTUAL GROUP, INC.,

    Defendant.

**COMPLAINT AND JURY DEMAND**

    Plaintiff Advanced Exteriors, Inc. ("Advanced Exteriors" or "Plaintiff"), through its attorneys, Daly & Black, P.C. and Gray LLC, respectfully submits the following Complaint and Jury Demand:

**INTRODUCTION**

    1.    Liberty Mutual Group, Inc. ("Liberty"), through its companies and subsidiaries, has consistently and without exception unreasonably denied payment for roofing material removal labor when processing insurance claims for loss from storm damage.

    2.    As part of "hail alley," Colorado properties are damaged every spring and summer by catastrophic storms, with hailstones often exceeding one inch in diameter wreaking havoc on roofs. Property owners in Colorado pay higher premiums than in other states for protection from the damaging effects of hail.

    3.    Recently, Colorado has ranked second only to Texas for the total number of hail loss claims filed by home and commercial building owners.

1

4.      When a property's roof suffers hail damage, roofing material must be removed and replaced by experienced and skilled roofing contractors.

5.      In most cases, roofing contractors are engaged by insureds (homeowners, commercial building owners, and HOAs) to complete roofing work for hail damage. The roofing contractors work directly with Liberty (or the insurance company whose policy covers the damage) to determine the scope of work that is covered by the insured's policy, and the amount the insurance company is obligated to pay the contractor for the work to be performed.

6.      To unfairly and artificially increase its profits, Liberty purposefully withholds payments for benefits that are covered under their policies. The contractor suffers the financial damage, since the insured is only asked to contribute their deductible towards the cost of repairs.

7.      One payout-evasion scheme that Liberty universally employs is the denial of payment for skilled roofing labor.

8.      Roofing contractors must hire crews of skilled workers to complete the difficult job of doing precise work at dangerous heights with delicate materials. Every year, roofers die at twice the rate as the average construction worker because of the inherent risk of roofing work. The work also requires precise and careful skill specific to working with roofing material.

9.      Accordingly, only specialized workers are hired for roofing labor.

10.     Obviously, contractors pay roofers the same higher-skilled labor wage regardless of whether they are removing roofing material or installing it, since both require the same skill and implicate the same risk.

11.     Specifically, roofing workers navigate a roof at least 30 feet off the ground; they use harnesses and cables, avoid damaging any roofing material that is still intact, and know how to remove or install a variety of roofing materials are all part of a delicate and precise process.

12. Contractors must incur higher workers compensation premiums for roofing labor due to the higher danger of roofing labor.

13. The work of both installation and removal of roofing material must be performed by the same roofing workers, using the same increased risk and skill compared to general construction or demolition work.

14. Yet Liberty does not pay roofing contractors for that skilled roofing labor when the labor is designated as "removal" by its estimating software. Instead, Liberty pays a significantly lower labor rate that is applicable to general demolition (think sledgehammers and unskilled labor).

15. The same roofing workers, using the same skills and facing the same risk, perform both removal and installation of roofing materials.

16. The contracting companies must pay the roofing specialists the same higher wages (and pay for the same higher workers compensation premiums) for both tasks.

17. There is no reasonable basis for denying roofing contractors payment for roofing removal labor.

18. This unreasonable denial is actionable under Colorado's bad faith law.

## COLORADO BAD FAITH LAW

19. Under Colorado law, C.R.S. 10-3-1115 and 1116, plaintiffs in first-party insurance claims can recover double damages, costs and attorney fees if an insurer unreasonably delays or denies payment of benefits.

20. Specifically, the bad faith statute provides that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." C.R.S.10-3-1115(1)(a).

3

21. Under C.R.S. §10-3-1115 and Colorado law interpreting this statute, neither a contractual relationship with the insurance company nor an assignment of claims is required to bring a statutory bad faith claim as a "first-party claimant." In other words, claims for statutory bad faith may be brought by an insured's contractor.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d), because (i) at least one member of the class is a citizen of a state different from Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of costs and interests, and (iii) none of the exceptions under that section applies to this action.

23. In the three years from 2017 to 2019, Colorado homeowners made 380,066 claims due to hail loss. That equates to over 250,000 homeowner hail loss claims in a two-year period.

24. Liberty benefits from an 11% market share of residential insurance policies and a 5.8% market share of commercial property insurance policies in Colorado.

25. An average residential roof size in Colorado is approximately 2,100 square feet (or 21 100-square foot "squares").

26. Liberty includes in its estimate a demolition labor rate for removal of roofing material that is approximately (and in some cases more than) $75 per square less than the skilled roofing labor removal rate.

27. Assuming even just a quarter of the over 250,000 residential roofs require complete replacement after sustaining hail damage—and not including a single commercial property covered by Liberty—Plaintiff and the class stand to recover damages close to $23 million for Liberty's unreasonable denial of payment for roofing material removal labor in a two-year class period.

28. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claim occurred here, and under 18 U.S.C. §1965(a) because Defendant transacts business or is otherwise found in this district.

## PARTIES

29. Plaintiff Advanced Exteriors is a Colorado corporation with a principal office street address of 2200 S. Valley Highway., Denver, Colorado 80222.

30. Plaintiff Advanced Exteriors is a citizen of Colorado.

31. Defendant Liberty is a Massachusetts corporation with its principal office at 175 Berkeley Street, Boston, Massachusetts 02116.

32. Liberty is not a citizen of Colorado.

## FACTUAL ALLEGATIONS

33. For more than the last two years Plaintiff has performed work resulting from roofing claims for hail damage on properties covered by Liberty insurance policies.

34. For every single claim pursuant to which Plaintiff performed roofing work, Liberty unreasonably denied payment for skilled roofing labor for removal of roofing materials and instead paid the much lower demolition labor rate meant.

35. Liberty uses a construction estimating software called Xactimate.

36. Xactimate is the leading construction estimating software for construction, and roofing work in particular.

37. The Xactimate program contains default payment rates for various categories of work.

38.     In particular, when roofing material <u>installation</u> or <u>replacement</u> is selected as the category of work, Xactimate defaults to skilled roofing work, automatically inserting into the estimate the higher rate for skilled roofing labor.

39.     However, when roofing material <u>removal</u> is selected as the category of work, Xactimate defaults to the demolition labor rate, automatically inserting the rate for general demolition labor.

40.     The lower demolition rate is the default labor rate for removal even though the same workers who perform the installation also perform the removal, using the same specialized roofing skills, encountering the same dangers, and being paid the same elevated wages.

41.     Below is a screenshot of the Xactimate program's default labor rates:



42.     When processing each and every roofing claim for hail damage, Liberty uses the lower default demolition rate for roofing material removal in its estimates, denying contractors payment for the difference between the skilled roofing labor and demolition labor rate.

43.     There is no reasonable basis for denying payment for skilled roofing labor.

44.     For example, Plaintiff performed roofing work for hail loss for a property in Elizabeth, Colorado with a date of loss of August 8, 2019 ("Elizabeth Claim").

45.     Liberty's estimate of covered work for the Elizabeth Claim was dated March 23, 2020.

46.     Liberty's estimate contained the following line item for roofing material removal:

6

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 1. Tear off composition shingles (no haul off) | 20.92 SQ | 36.03 | 0.00 | 753.75 | (0.00) | 753.75 |
| Includes: Labor cost to remove shingles and felt and to discard in a job-site waste receptacle | | | | | | |

47. For removal of 20.92 SQ (or "squares"), Liberty agreed to pay a total $753.75, with a demolition labor rate of $36.03 per square.

48. The skilled roofing rate for removing roofing material would have been $166.82 per square in Elizabeth, Colorado, on the date of the estimate.

49. Accordingly, the total payment to Plaintiff for removal of 20.92 squares of roofing material, which Liberty admitted was a covered benefit, should have been $3,489.87.

50. Therefore, **Plaintiff was denied $2,736.12** for the Elizabeth Claim.

51. Similarly, Plaintiff performed roofing work for hail loss for a property in Fort Colins, Colorado with a date of loss of June 6, 2020 ("Fort Collins Claim").

52. Liberty's estimate of covered work for the Fort Collins Claim was dated July 17, 2020.

53. Liberty's estimate contained the following line item for roofing material removal:

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 2. Tear off composition shingles (no haul off) | 23.61 SQ | 37.48 | 0.00 | 884.90 | (0.00) | 884.90 |

54. Liberty agreed to pay a total of $884.90 for removal of 23.61 squares, based on a demolition labor rate for removal of roofing material of $37.48.

55. The skilled labor rate for removing roofing material would have been $134.99 per square in Fort Collins on the date of the estimate.

56. Accordingly, the total payment to Plaintiff for removal of 23.61 squares of roofing material, which Liberty admitted was a covered benefit, should have been $3,187.11.

57. Therefore, **Plaintiff was denied $2,302.21** for the Fort Collins Claim.

7

58. Similarly, Plaintiff performed roofing work for hail loss for a property in Bennett, Colorado with a date of loss of July 10, 2020 ("Bennett Claim").

59. Liberty's estimate of covered work for the Bennett Claim was dated September 30, 2020.

60. Liberty's estimate contained the following line item for roofing material removal:

| QUANTITY | UNIT | TAX | O&P | RCV | AGE/LIFE | COND. | DEP % | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|---|
| 1. Tear off composition shingles (no haul off) | | | | | | | | | |
| 44.24 SQ | 36.18 | 0.00 | 0.00 | 1,600.60 | 5/NA | Avg. | NA | (0.00) | 1,600.60 |

61. For 36.18 squares, Liberty agreed to pay a total $1,600.60, with a demolition labor rate of $36.18 per square.

62. The skilled labor rate for removing roofing material would have been $182.85 per square in Longmont on the date of the estimate.

63. Accordingly, the payment to Plaintiff for removal of 36.18 squares of roofing material, which Liberty admitted was a covered benefit, should have been $6,615.51.

64. Therefore, **Plaintiff was denied $5,014.91** for the Longmont Claim.

## CLASS ACTION ALLEGATIONS

65. Plaintiff realleges and incorporates by reference all prior allegations of this Complaint as if fully set forth herein.

66. Plaintiff seeks certification of a Class as defined below, pursuant to Fed. R. Civ. P. 23:

> All persons or entities who performed roofing work in Colorado pursuant to a claim for covered roof damage under a Liberty insurance policy, and were denied proper roofing removal payments by Liberty in the period of July 2, 2019, to the present.

8

Excluded from the Class are (i) any judge(s) presiding over this action and members of their families; (ii) Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Liberty or its parents have a controlling interest and their current or former employees, officers and directors; (iii) persons who properly execute and timely request exclusion from the Class; and (iv) the legal representatives, successors or assigns of any such excluded persons.

67. **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but upon information or belief, there are hundreds of contractors who have done roofing work in Colorado pursuant to Liberty insurance policies. Members of the Class can be identified through Liberty's records.

68. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members. These common questions include but are not limited to:

   i. Whether Liberty denied payment for skilled roofing labor for roofing material removal.
   ii. Whether Liberty's denial of payment for skilled roofing labor for roofing material labor was unreasonable.
   iii. Whether Liberty was unjustly enriched.
   iv. Whether Plaintiff is entitled to injunctive relief.
   v. Whether Plaintiff and the Classes are entitled to damages.
   vi. Whether Plaintiff and the Classes are entitled to any other relief.

69. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Liberty's uniform, wrongful conduct in denying payment for roofing material removal labor.

70. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest antagonistic to those of the Class and Liberty has no defenses unique to Plaintiff.

71. **Appropriateness**: The class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Liberty's wrongful conduct. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Liberty's unlawful practices. Even if Class members could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

72. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Liberty has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole. Liberty's practices challenged herein apply and affect

members of the Class uniformly and Plaintiff's challenge of these practices hinges on Liberty's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

73. Plaintiff reserves the right to revise the Class definition based on information learned through discovery.

### PLAINTIFF'S FIRST CLAIM FOR RELIEF
### VIOLATION OF C.R.S. 10-3-1115 AND 1116
### (On behalf of Plaintiff and the Class)

74. Plaintiff realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

75. At all times pertinent hereto, the following Colorado statute was in effect:

**10-3-1115. Improper denial of claims – prohibited – definitions – severability.**

(1) (a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

76. C.R.S. §10-3-1116 provides a remedy for such denial or delay of payments in the form of "reasonable attorney fees, court costs, and two times the covered benefit."

77. Liberty unreasonably delayed or denied payment of insurance benefits by:

  (1) failing to provide or delaying the payment of the actual, necessary, and reasonable funds to remove portions of damaged roof systems, where such removal is admittedly a covered benefit;

  (2) engaging in additional acts and omissions that may be discovered in the course of litigation.

78. Liberty unreasonably denied and delayed payment in violation of C.R.S. §10-3-1115.

79. Liberty is subject to the provisions of C.R.S. §10-3-1116 for double damages, court costs, and attorney fees.

11

80. Under C.R.S. §10-3-1115 and Colorado law interpreting this statute, "on behalf of any first-party claimant" includes claims brought by an insured's contractor.

### PLAINTIFF'S SECOND CLAIM FOR RELIEF
### UNJUST ENRICHMENT
### (On behalf of Plaintiff and the Class)

81. Plaintiff realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

82. Liberty received the benefit of the difference between the skilled roofing labor and demolition labor rates for roofing material removal labor.

83. Liberty's benefit was at the expense of Plaintiff and the Class.

84. It would be unjust for Liberty to retain that benefit.

### PLAINTIFF'S THIRD CLAIM FOR RELIEF
### DECLARATORY JUDGMENTAND INJUNCTIVE RELIEF
### (On behalf of Plaintiff and the Class)

85. Plaintiff realleges and incorporates by reference the foregoing allegations of this Complaint as if fully set forth herein.

86. Liberty's practice of paying a lower demolition labor rate for roofing material removal, instead of the skilled roofing labor rate, is an unreasonable denial of a covered benefit and is a violation of C.R.S. 10-3-1115 and 1116, as discussed above.

87. Plaintiff seeks a declaratory judgment that Liberty's practice of denying payment to contractors for roofing material removal labor is a violation of Colorado state law, C.R.S. 10-3-1115 and 1116.

88. Plaintiff seeks a permanent injunction enjoining Liberty from continuing to engage in the unlawful practice.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for relief against Liberty as follows:

      a.    Certifying this case as a class action, designating Plaintiff as Class Representative and his attorneys as Class Counsel;

      b.    Double damages, court costs, and reasonable attorney fees incurred in prosecuting this action pursuant to C.R.S. §10-3-1116;

      c.    An award of pre- and post-judgment interest;

      d.    Costs and expenses;

      e.    A declaratory judgment that Liberty's failure to pay is unlawful;

      f.    Equitable and injunctive relief to Plaintiff and the Class, including a permanent injunction, restitution, disgorgement, and an accounting of all revenue gained by Liberty through its unlawful conduct; and

      g.    Such other and further relief as this Court may deem just, equitable or proper.

**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

Respectfully submitted July 2, 2021.

s/ Richard D. Daly
*Richard D. Daly*
Daly & Black, P.C.
John Scott Black
Melissa Wray
2211 Norfolk Street, Suite 800
Houston, TX 77098
Telephone: (713) 655-1405
Email: rdaly@dalyblack.com
       jblack@dalyblack.com
       mwray@dalyblack.com

and

/s/ William C. Gray
*William C. Gray*
Gray LLC
Nathalie E. Sar

17 N. State St., Suite 1600
Chicago, IL 60602
Tel: 312.967.3653
Email:  bgray@grayllclaw.com
            nsar@grayllclaw.com

*Attorneys for Plaintiff*